Good morning, Your Honors. Good morning. I'm William Thomas. I represent Teresa Phelps in this matter. This case arises under the Fair Labor Standards Act, the Anti-Retaliation Section 215A3. Teresa Phelps was the city clerk for the City of Parma for 22 years. She was annually appointed by the city council until 2014, when she was not appointed. The facts surrounding this case really, in many respects, involve application of this court's recent decision in Rosenfeld Field v. Global Trans, in which this court basically reviewed the standard, what was the rule that was going to be followed in determining when a person was protected under the anti-retaliation statute. What this court did was it looked at some previous other circuits' cases which had applied Excuse me, counsel, I'm not finding Rosenfeld. Was that cited in your opening brief? Yes, it was, Your Honor. How do you spell it? R-O-S-E-N Field, F-I-E-L-D. All right. Excuse me, I'm just looking at the blue brief. My apologies. No. The circumstance under which the Rosenfeld case became of significance was at the time that the lower court ruled on the summary judgment motion, Rosenfeld had not been decided. It was several months after we submitted our briefing on that that Rosenfeld Field came about, the decision was entered, and then the lower court relied extensively on Rosenfeld in reaching its determination that, in fact, summary judgment should be granted on the retaliation claim. Rosenfeld basically dealt with a situation where the whistleblower, the putative whistleblower, was not responsible for the protected activity. Here it seems pretty clear that Ms. Phelps, as the city clerk slash city treasurer, was responsible for processing the payroll and determining who should get how much for the hours that the police officers were. Your Honor, I would disagree with that. If you look at her job description. I mean, the mayor signed the paychecks, but she actually looked at the – to actually process the payroll, did they not? That is incorrect. Her testimony during her deposition was that the various departments would submit their payroll numbers and she was told to pay them no matter what. Those are the time records, but she processed the payroll. The question here is whether or not the payroll was properly computed, wasn't it?  For the hours that were reported to her. Right, it was computerized. If she's not the person responsible for processing the payroll, who is? It's a matter of – it's an administrative function is the way that the job description goes, and it's also the way she testified. Her testimony – I read her deposition, and her testimony was that she brought this matter to the attention of the mayor and the city council because she was concerned that we – and I think she used that word – were not properly paying the policemen. That was her testimony, but I think – Why shouldn't we consider, unlike in Rosenfield, why shouldn't we consider Ms. Phelps here to be the primary person responsible for seeing that the city complied with the Fair Labor Standards Act? Well, I believe, Your Honor, that if you look at the Rosenfield case, we're really talking about a managerial position as opposed to just a function. And if you look at her – She is the duly appointed clerk and treasurer for what – the city of Parma, I take it, is 2,066 people as of 2014 census. So there aren't too many officials in the city of Parma. But there's something like 14 – I think the mayor said 11 or 12 full-time employees, depending on whether they had the kid during the summer who worked for the street department. Yes. Okay. So – and it was Ms. Phelps who spent all the time and effort going to both the council, the mayor, the city attorney, and ultimately the Idaho Department of Labor to try and figure out the answers to bring the city into compliance with the Fair Labor Standards Act. I think if you look a little deeper, what you find is that she was directed by the mayor to go find the answers. The mayor told her, fix it. Let's make sure we're in compliance. And then left it – Let me ask you from a slightly different perspective. What is it in the record which would show that she was an advocate for the victims as opposed to simply serving as the compliance officer for the city? I believe, Your Honor, there is testimony – excuse me – that she – Did she ever put the city on notice that she was representing this class of employees? I believe her testimony – Against the city for its violation of the FLSA? Your Honor, I believe her testimony was that she wanted to make certain that these police officers got the pay that was due to them. They weren't getting the overtime they were supposed to get. And that she was – on that particular issue, she was, in fact, advocating on their behalf. But she was doing it simply as it was part of her job, was it not? We contend that that was not part of her job, that maintaining compliance was not part of her job. Her job may have been to process payroll, but it had nothing to do with actually complying with the Fair Labor Standards Act. What do we do with the position that she took vis-à-vis the chief when he complained on behalf of the officers that they weren't making as much money as they had been before as a result of the changes that she recommended be made to the city council? I believe, Your Honor, that the – That doesn't sound like the role of an advocate. Well, I think that all she was doing was administering. What she learned was the difference between using the 160-hour rule versus the 171. It was a mathematical computation of dividing. But I thought her testimony was, you know, I know that the chief didn't like it because he made, what, $11,000 or $13,000 less as a result of the change, but he didn't understand the wage and hour laws the way that I do. Isn't that what she said in her – There is some testimony of that case. But I think if you look, you're going to find that she sought legal advice from the city attorney. She sought advice regarding FLSA from the city auditor. She sought advice from the Idaho Department of Labor. She wasn't going out looking at the Fair Labor Standards Act. She wasn't assuming responsibility for the actual interpretation of the law. She was looking to have the law interpreted for her. But she seemed to have some pretty strong feelings about the direction that she was given as to whether or not that was complying with the statute, right? She had some strong feelings about it, yes, Your Honor. Okay. And those strong feelings ultimately resulted in the city council and the mayor directing her to do it in a certain way. She believed that the original directions were incorrect and inaccurate. And then she wanted something in writing, and so the city attorney said, okay, do you need some water? Do you want to get a cup of water? Thank you. The city attorney said, you know, this is the way it needs to be done, and then ultimately I guess there was an executive session of the council where they said do it this way. There was a directive to her, yes, there was. Counsel, I've got a question on the Whistleblower Act, if I can go to that. Yeah, go right ahead. What is your argument that there was sufficient showing of pretext? What is the evidence on pretext? Go ahead. Number one, Your Honor, a direct statement from the mayor. She confronted the mayor, it would have been I believe in October of 2013, after he had said that you're not getting a raise, and she said this is because of my activities involving the payroll, and he said yes. And is that sufficient direct evidence of pretext to avoid summary judgment? Is that coupled with temporal proximity? Yes, I believe it is. You've got an admission, you have a judicial admission. Excuse me, not a judicial admission. But the problem with what the mayor said was, as I understand the record, is that at some point she was taking positions that were not FLSA violations, and there were difficulties in getting her to do what the council wanted her to do. And then the chief, I guess, made a big presentation to the council about the unhappiness of the police officers with the positions that she had been taking. So why wouldn't that be a legitimate reason for an employer to say, you know what, the way you handled this pay issue was so poorly done, we're not going to give you a raise this year. And why is that a prima facie case of retaliation? I believe because the core crux of the matter is her involvement in the payroll issues, the Fair Labor Standards Act issues. I think that all arises from that. That's the genesis of the particular problem. Up until that time. But it's not quite, I guess the concern I have with your answer is, it's not a clear-cut explanation of retaliation for conduct that the city was engaged in that violated the statute when the mayor had told her, bring us into compliance with the statute. And then there were issues over other matters of concern related to payroll, including do we do this on a 160-hour basis, do we do it on a 171-hour basis, how do we compute the hourly wage of the police officers that didn't have anything to do with the initial concern, which was we were paying them straight time for every hour they worked, even though some of them were overtime. Right. But there were two other issues that were related to the Fair Labor Standards Act that she also complained about, one of which was the use of holiday pay, how that was paid, and the use of... The issue there was that in computing the number of hours worked in a 28-day period, they were counting their sick leave, accumulated sick leave, and vacation time as if they had been worked as opposed to... The city was more generous to the officers than they should have been because they should have been making them work each and every hour of the either 160 or 171 hours in a 28-day period, right? There was that issue, but that also is, as the Department of Labor told Ms. Phelps, that was, in fact, a violation of the Fair Labor Standards Act. To credit them for work based on, let's say, in a pay period, eight hours of sick leave plus eight hours of vacation time and not make them work the 16 hours that they got credit for? Yes. So how is that a violation of the Fair Labor Standards Act? That sounds like a pretty generous deal for the employees. That certainly is what she believed and what she was advocating for. But it doesn't establish an FLSA violation. I don't know if I'm making my questions very clear, but this pay, you know, to take Judge O'Scanlan's question about is there a prima facie case here of entitlement to whistleblower protection, protected activity, from based simply on the mayor's statement, and the reason you didn't get a pay raise was because of the way you handled the pay issue. There were different components to the pay issue, only one of which was a true FLSA violation, which was they weren't paying overtime after 160 or 171 hours in a 28-day pay period. Did you understand my question? Yes, I didn't. I'm trying to think of a brilliant answer here. Okay. Fair enough. Take as much time as you want. No, I'm sorry. All right. You want to save some time for rebuttal? You're almost out of time. I'll save the next 30 seconds. I'll give you a little more than 30 seconds on rebuttal. All right. Mr. Naylor, let's hear from the city. Thank you, Your Honor. May it please the Court. My name is Jacob Naylor, and I represent the city of Parma. As the Court has determined through their questioning, the main issue here with the FLSA is that it's the city of Parma's position that Ms. Phelps' conduct was not protected conduct under the content and context analysis of Kasten and then adopted by this Court in more detail in Rosenfield. And so those two cases establish. You would agree that, I guess, the central issue on that front is whether FLSA compliance issues were within her job duties? Yes, I would, Your Honor. And I guess why isn't there at least a disputed issue of fact as to whether that's true? It's not a disputed issue of fact based on the undisputed. Counsel, could I ask you to speak a little louder, please? Oh, yes. I'm sorry, Your Honor. The issue with that is it's not an issue of disputed fact, mainly because there's no – it's her conclusory statement in her deposition to say I wasn't responsible for FLSA. Well, no. I mean, come on, Counsel. You can look at her job description. It's quite detailed, and there's nothing in there about FLSA compliance issues, right? Specifically in her job description, no. But when you look at the administrative functions as city clerk and the city treasurer, the city treasurer in the statute specifically delineates that the treasurer is responsible to act and to protect the financial interests and the property interests of the city. And so ensuring FLSA compliance would be easily inferred under that. And that's what I'm saying. Why couldn't a reasonable jury listen to all the evidence, look at the job description, and say actually not? She's not a lawyer, certainly. I don't think she has any training in the FLSA's requirements, right? That's why she was going to the city attorney, I think, and seeking legal advice. Does she have a college degree? I'm not sure of that, Your Honor. I mean, I don't know how – it strikes me as an odd – I know this is a small city, but it seems to me, you know, I don't know what the FLSA requires, right? I mean, that's something – if you're going to say she is the sole person within the city, at least on the first level, whose job it is to make sure that the city is complying with this quite complicated set of legal requirements, that just strikes me as maybe, maybe you're right, but why couldn't a jury look at this and say actually not? Well, I think, Your Honor, the point I would make to that is that it's not that you're a definitive FLSA compliance officer. It's that in the scope of your employment – I mean, she obviously understood that the lack – having more than four officers invoked the protections of the FLSA in this context, and she did that independently of anything else based on her years of experience as the city clerk and city treasurer. So I understand that while specifically she was not the FLSA compliance officer or wasn't in her job description, her experience and her conduct in not only pointing out and identifying the issue, but then later taking steps in direct contravention to the directions given to her by the mayor and the city attorney, demonstrate that she – if not in her job description, she believed that she was the FLSA compliance officer. Does it? Or does it just mean that somebody, rightly or wrongly, and it sounds like here maybe wrongly in some respects, somebody has come to the conclusion that the law requires one thing, and they're feeling like, hey, you, my boss, you're directing me to do something that – I'm going to be breaking the law if I have to do this. I kind of like some written assurance that I'm not going to get blamed for this later. That's consistent, I grant you. That's consistent with your theory. But isn't it also consistent with somebody who just, hey, I think I've spotted a problem. It's not my responsibility to deal with this, but I want to bring it to the attention of my superiors, and now I'm being retaliated against for that. I think, Your Honor, with the way that the city interprets Kasten and Rosenfeld is that you don't – it doesn't require – when you look at the context of everything that she's doing, that it's not a reasonable inference that she didn't believe that she was under FLSA, that she wasn't responsible for FLSA in her duties in doing payroll, and in the conduct that she actually took. I don't think it's a reasonable inference to believe that she didn't have that. Tell me if I'm misconstruing your position, but I think for you to prevail, you have to take the position that basically if payroll is in your bailiwick and you raise some concern about FLSA compliance, that's going to be deemed to be part of your job responsibilities, whether it's in your job description or not, whether you have any training on it or not, because that's all I see going on here. Well, I think, Your Honor, the important points that Kasten and Rosenfeld both established was that this needs to be a case-by-case analysis. Rosenfeld is probably the best example of that because you have somebody who the court says we would assume, as you said, that somebody who deals with payroll would have FLSA compliance as part of their bailiwick and that they would be doing that. But in this specific instance, her supervisor directly told her, you have nothing to do with FLSA. The fact that she raised these issues created immediate friction and problems with her supervisor. And so it was the court and Rosenfeld almost made it, they almost established what you say or the inference that you're hypothesizing here is that if you have payroll, you're kind of assumed to be a manager with FLSA compliance issues unless there's some direct evidence that you don't. And here, as was pointed out and is clear in the record, there is no evidence that anybody else in the city had FLSA compliance issues. Even the city attorney, when you look at the statute or the city ordinance that deals with the city attorney, the city attorney is only to be consulted on legal matters when requested. So it wasn't like they had a city attorney there in the city hall. This was a private lawyer who was on contract to the city, right? Yes, that's correct, Your Honor. Okay, on an as-needed basis. Yes, that's correct, Your Honor. And so I understand your question. I mean, I understand your position, but that would be our position on that. What's your view on, if you don't have more to say on the FLSA retaliation on the state law claim, what's your view on whether state or federal law governs just the standard that we assess as to how much evidence or pretext you need to get past summary judgment? Is that a state law governed issue or a federal law governed issue? Well, in Idaho, it's an interesting question in Idaho because the state law in Curley, which is a state law case, determined that, to just cut to it, that summary judgment for a whistleblower action is almost impossible. Right. That's why I'm asking. And what's been interesting about Idaho is that in the federal courts, they've looked at it as a procedural issue. And so in dealing with that specific question in federal courts, summary judgment is applicable in whistleblower actions when they're looking at state whistleblower actions because they applied the McDonnell-Douglas issue as a procedural question. And so in dealing with a federal court looking at a procedural issue, that is how Idaho has kind of come down on this. So that's the law of the land in Idaho at this point. And so we would apply the McDonnell-Douglas burden shifting and the applicable case law to that when we're looking at evidence of retaliation. And so you're saying we would ignore the Idaho state cases? Not. The standard they articulate doesn't govern in federal court? Is that what you're saying? For summary judgment purposes? For summary judgment, the standard that is used is the McDonnell-Douglas standard. On a federal claim, because this is a federal claim. No, no, I'm sorry. I'm talking about the state claim, right? No, and I understand. Yes. But that is it, is that the federal courts have more or less ignored the Idaho state. Okay, help me understand. Why is that permissible? As I'm not entirely familiar with all the case law going back, but the reasoning that was provided in one of the prior cases is that the question of the standard at summary judgment is a procedural question. And for federal law, that is a determination of McDonnell-Douglas burden-shifting analysis. And so because it's a procedural question as to what standard is used at that point, then the federal courts have taken that that question means that they apply McDonnell-Douglas and not the Idaho court case of Curley because it's procedural and not substantive. Okay. Well, even assuming, let's say, that the federal standard, the less favorable for your opponent standard applies, why isn't the direct evidence? Well, that's kind of an unfair way to frame it. Why isn't the mayor's statement or ledge statement to Ms. Phelps, why isn't that enough combined with the rest of the evidence? I would actually argue, Your Honor, that that statement is not direct evidence of retaliatory intent. When you look at the case law in Godwin v. Hunt-Wedson, it establishes that direct evidence is evidence which, if believed, proves the fact of retaliation without inference or presumption. And in this case, the statement that was specifically made in the record, it's in page 131, Ms. Phelps stated to the mayor that the lack of a pay raise, it is because of the police department and the problem with payroll. You're mad at me for this. And he answered, yeah. And so the issue with that is that as was. But there's a second statement, and that's the one that I agree with you. That one maybe you could read either way. But there's a second statement that's more definitive. Maybe you know where it is. I thought that was the only statement that was at issue, Your Honor. No, I think there's not. I'll have to see if I can find it. I'm sorry if I missed that, but I thought that was the only statement that we were talking about. But regardless, if this is the only statement, the reason why it is not direct evidence is because of these other issues with past the initial FLSA issue questioning the lack of overtime pay. There were other subsequent issues that dovetail more with the Claudio Gattoi case that was cited in Rosenfield. I think that's from the First Circuit. And in that case, it was a similar instance where an initial legitimate FLSA complaint or issue was raised, but then afterwards the employee defied lawful directives to comply with what was established. And so this statement alone, it is unclear without further inference or presumption what Ms. Phelps was referencing or what the mayor was referencing. And in the mayor's deposition testimony, he specifically stated that the problems he had with payroll was this failure to comply with lawful directives moving forward. And so I would argue that this statement, it is arguably indirect evidence of retaliatory motive. But when you look at the McDonnell Douglas burden-shifting analysis and what is required for showing a pretext, the city has established multiple evidences of other employment issues and that those were the basis behind her not receiving the pay raise. Going back one quick point I'd like to make about the context, in talking about her job as the clerk and treasurer, that the administration, counsel talked about that and there's issues with the administration, but that administrative functions create her responsibility in managing the issues and the affairs of an organization. And that is an additional issue why the FLSA is in play here. If there's no other questions, Your Honors, I'd like to rest on the briefs. I don't have anything. Anything further? Nothing further. Okay. Nothing further. Okay. Very well. The case just argued is submitted. The last case on the briefs, Sauerbrier Ranchers v. Catlin Specialty Insurance Company, is submitted on the briefs and will be adjourned until tomorrow morning.
judges: O'scannlain, Tallman, Watford